### In re BRITISH AMERICAN PROPERTIES III, LTD. Debtor.

**Pamela Gale Johnson, Chapter 7 Trustee, Plaintiff,**

v.

**Heather Seay Williamson, Defendant and Counterclaimant.**

**Bankruptcy No. 04–48049.
Adversary No. 06–3695.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

March 14, 2007.

David Ronald Jones, Porter and Hedges LLP, Houston, TX, for Plaintiff.

John H. Bennett, Jr., Attorney at Law, Houston, TX, for Defendant and Counterclaimant.

**REPORT AND RECOMMENDATION TO THE UNITED STATES DISTRICT COURT RECOMMENDING THE WITHDRAWAL OF THE REFERENCE OF THIS ADVERSARY PROCEEDING**

JEFFREY E.T. BOHM, Bankruptcy Judge.

## I.  INTRODUCTION

The issue presented is whether, in an adversary proceeding, a defendant waives

the right to a jury trial by filing a counterclaim against, and seeking attorney's fees from, the bankruptcy estate. This Court believes that the particular facts of this adversary proceeding, and the defendant's specific counterclaims, do not involve the process of allowance and disallowance of claims, nor do they invoke the equitable power of the bankruptcy court to adjust the debtor-creditor relationship. Thus, this Court's view is that there was not a waiver of the right to a jury trial. Accordingly, this Court makes this Report and Recommendation, pursuant to Local Bankruptcy Rule 5011, in favor of withdrawing the reference so that the District Court may conduct a jury trial.

Pamela Gale Johnson, the Chapter 7 Trustee (the Trustee), filed the above-referenced adversary proceeding (the Adversary Proceeding) against Heather Seay Williamson (the Defendant) to avoid and recover three alleged transfers totaling $ 229,323.00 made from the Debtor to the Defendant over the course of 2003. [Docket No. 1, ¶¶ 8–10.][1] After filing her Answer and Counterclaim [Docket No. 6] and Demand for Jury [Docket No. 7], the Defendant filed an Amended Motion to Dismiss[2] or Alternatively for Withdrawal of Reference (the Motion to Dismiss or Withdraw). [Docket No. 10.][3] The Trustee then filed an Objection to the Defendant's Motion to Dismiss or Withdraw [Docket No. 13], an Answer to Defendant's Counterclaims [Docket No. 12], and a Motion to Strike Jury Demand [Docket No. 14]. The Court then held a hearing on the Motion to Dismiss or Withdraw and the Trustee's Motion to Strike Jury Demand. After considering the Defendant's Motion to Dismiss or Withdraw, the Trustee's Objection thereto, and the arguments of counsel, and for the reasons set forth herein, the Court is of the opinion that the Defendant has not waived her right to a jury trial. Accordingly, this Court recommends that the District Court withdraw the reference of this Adversary Proceeding.

## II. FACTUAL BACKGROUND OF THE ADVERSARY PROCEEDING

The relevant facts, either as admitted by counsel of record or as determined from the hearing and the record, in chronological order, are as follows:

1. British American Properties III, Ltd. (the Debtor) filed a voluntary Chapter 11 petition on December 21, 2004. [Case No. 04–48049, Docket No. 1.]

2. On August 15, 2005, this Court granted the motion of the Trustee to convert the Debtor's case into a Chapter 7 case. [Case No. 04–48049, Docket No. 98.]

3. On December 8, 2006, the Trustee initiated this Adversary Proceeding by filing a Complaint. [Docket No. 1.] The Complaint seeks to avoid

---

1. Unless otherwise noted, any reference to the docket refers to the docket in Adversary Proceeding Number 06–03695.

2. This Report and Recommendation is limited to whether the reference should be withdrawn by the District Court. In a separate order, entered simultaneously on the docket with this Report and Recommendation, this Court has denied the Defendant's Motion to Dismiss.

3. On January 5, 2007, the Defendant filed her original Motion to Dismiss or Alternatively for Withdrawal of Reference. [Docket No. 8.] On January 10, 2007, the Court signed an order dismissing without prejudice the Defendant's motion for failure to sign the motion pursuant to Bankruptcy Local Rule 5005(a). [Docket No. 9.] Thereafter, the Defendant corrected this deficiency in the Amended Motion to Dismiss or Alternatively for Withdrawal of the Reference. [Docket No. 10.]

certain transfers allegedly made by the Debtor in 2003 as fraudulent pursuant to 11 U.S.C. §§ 544 and 550 and §§ 24.005 and 24.006(a) of the Texas Business and Commerce Code [*Id.* at ¶¶ 13–16]; and the Trustee seeks a judgment pursuant to § 542 requiring the Defendant to turn over to the Trustee the amounts of those allegedly fraudulent transfers. [*Id.* at ¶ 17.]

4. On January 4, 2007, the Defendant filed her Answer and Counterclaim. [Docket No. 6.] In the Answer, the Defendant makes a demand for a jury trial and specifically notes that she does not consent to this Bankruptcy Court conducting a jury trial. [*Id.* at ¶¶ 17, 18.]

5. The Counterclaim filed by the Defendant seeks "enforce[ment of] the liens and equities given her by the TUFTA[4] and the Bankruptcy Code, including but not limited to the liens for the value given for her payment, and provision of security for, the indebtedness of the Debtor to Central Bank." [*Id.* at ¶ 60.] Additionally, the Counterclaim asks the Court to award costs and reasonable attorney's fees from the Debtor's Chapter 7 estate for the defense of this suit and prosecution of the Counterclaim. [*Id.* at ¶ 61.]

6. On January 4, 2007, the Defendant also filed a separate Demand for Jury Trial. [Docket No. 7.]

7. On January 10, 2007, the Defendant filed her Motion to Dismiss or Withdraw. [Docket No. 10.] In the Motion to Dismiss or Withdraw, the Defendant asserts that, because she made a timely demand for a jury trial and has not consented to this Bankruptcy Court conducting a jury trial, the Adversary Proceeding should be dismissed or, in the alternative, that the District Court should withdraw the reference. *Id.*

8. On January 12, 2007, the Trustee filed an Answer to Defendant's Counterclaims [Docket No. 12], an Objection to the Motion to Dismiss or Withdraw (the Objection) [Docket No. 13], and also a Motion to Strike Jury Demand (the Motion to Strike). [Docket No. 14.] In the Objection and the Motion to Strike, the Trustee argues that the Defendant has waived her right to a jury trial, despite making the demand, by filing a counterclaim and request for attorney's fees against the estate. [Docket No. 13, ¶ 7, Docket No. 14, ¶ 8.] The Trustee's position is that the preservation of the right to a jury trial and the assertion of counterclaims are mutually exclusive courses of action, and by making affirmative claims against the bankruptcy estate, the Defendant has waived any right she had to a jury trial. [Docket No. 13, ¶ 8.]

9. On January 25, 2007, the Defendant filed a Response to the Motion to Strike and a Reply to the Objection. [Docket No. 20.] The Defendant contends in the Response that she has not waived her right to a jury trial because: (1) she is not a creditor and has not filed a "claim" against the estate [*Id.* at ¶¶ 10–11]; (2) the counterclaims she did make were compulsory and a defendant should not be put in a position of having to choose between filing a

---

4. In the Defendant's Answer and Counterclaim and herein, TUFTA refers to the Texas Uniform Fraudulent Transfer Act, Texas Business and Commerce Code §§ 24.001 *et seq.*

compulsory counterclaim and waiving the right to a jury trial [*Id.* at ¶¶ 9, 15]; and (3) the Trustee's reliance on case law holding that filing a counterclaim is the same as filing a proof of claim is misplaced because the current counterclaims arose post-petition as a result of the Trustee's filing the Complaint. [*Id.* at ¶ 18.]

10. On January 25, 2007, this Court held a hearing on the Motion to Dismiss or Withdraw and the Motion to Strike. To allow additional time for review of case law, the Court continued this hearing until February 8, 2007, at which time counsel for the parties made further oral arguments on the relevant issues.

## III. THIS COURT RECOMMENDS THAT THE DISTRICT COURT WITHDRAW THE REFERENCE OF THIS ADVERSARY PROCEEDING

■ In *Holland America Insurance Company v. Roy*, 777 F.2d 992, 999 (5th Cir.1985), the Fifth Circuit held that in determining whether a movant has shown cause under 28 U.S.C. § 157(d) to withdraw the reference, a district court should consider the following issues: (1) whether the underlying lawsuit is a core or non-core proceeding; (2) whether promotion of uniformity in bankruptcy administration will be achieved; (3) whether forum shopping and confusion will be reduced; (4) whether there will be economical use of debtors' and creditors' resources; (5) whether the withdrawal of reference will expedite the bankruptcy process; and (6) whether a party has demanded a jury trial. *See also Mirant Corp. v. Southern Co.*, 337 B.R. 107, 115 (N.D.Tex.2006) (considering *Holland America* factors in determination of motion to withdraw reference).

In reviewing these factors in the proceeding at bar, it is evident that the one decisive issue is whether or not the Defendant has waived her right to a jury trial. The importance of this fundamental right carries such weight that the collective effect of the remaining five factors should not alter the final determination. In the proceeding at bar, however, many of these remaining five factors favor a withdrawal of the reference, and it is worthwhile to review these factors before turning to the jury trial issue.

### A. Whether the underlying lawsuit is a core or non-core proceeding

■ The Trustee's complaint seeks to avoid certain conveyances as fraudulent and seeks the return of those monies to the bankruptcy estate. Included in the list of enumerated core proceedings are "proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C. § 157(b)(2)(H). The Defendant apparently does not argue that this Adversary Proceeding falls outside of the scope of this section, but rather that her valid demand for a jury trial somehow converts this suit into a non-core proceeding. In her Answer, the Defendant asserted that "This case is not a 'core proceeding' triable in the Bankruptcy Court because a jury trial has been properly and timely demanded." [Docket No. 6, ¶ 18.] There is no precedent or authority cited for this proposition, and this Court knows of none that would support such a conversion from core to non-core. This Court believes that the Defendant has simply confused the issues of core proceedings and withdrawal of reference. As discussed in this Court's Order Denying the Motion to Dismiss, if there is a valid demand made for a jury trial and the Bankruptcy Court is unable to conduct that trial through consent, the appropriate course of action is for the Dis-

trict Court to withdraw the reference so that it may conduct a jury trial. However, these circumstances do not change the nature of the proceeding from core to noncore. Thus, setting aside any consideration of the jury trial issue, this suit is squarely a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H); therefore, this factor weighs against withdrawal of the reference. It is the only one that does.

## B. Whether promotion of uniformity in bankruptcy administration will be achieved

If a bankruptcy court is already familiar with the facts of the underlying action, then allowing that court to adjudicate the proceeding will promote uniformity in the bankruptcy administration. *See Palmer & Palmer, P.C. v. U.S. Trustee (In re Hargis)*, 146 B.R. 173, 176 (N.D.Tex.1992); *Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.)*, 136 B.R. 59, 61 (S.D.N.Y. 1992) (finding that "Given [the bankruptcy's judge's] familiarity with the bankruptcy case involving [the debtor], [the bankruptcy judge] is in the best position to monitor all the proceedings related to that bankruptcy, including this adversary proceeding."). Recently, this Court has twice prepared Reports and Recommendations on the withdrawal of reference, and in each case reached different conclusions under this factor. *Waldron v. Nat. Union Fire Ins. Co. of Pittsburgh, PA (In re EbaseOne Corp.)*, 2006 WL 2405732, *4, 2006 Bankr.LEXIS 1861 at *13–15 (Bankr. S.D. Tex. June 14, 2006); *Veldekens v. GE HFS, Inc. (In re Doctors Hospital 1997, L.P.)*, 351 B.R. 813, 867–68 (Bankr. S.D.Tex.2006). In *EbaseOne*, this Court noted that none of the substantive issues in the adversary proceeding had been reached because the motion to withdraw was filed shortly after the complaint. The Court concluded that it had not reached a significant level of familiarity with the case and therefore that the factor favored withdrawal. Conversely, in *Doctors Hospital*, this Court had held multiple and lengthy hearings on an application for preliminary injunction and several motions for summary judgment. The Court, therefore, determined that it had reached such a level of familiarity with the facts of the underlying adversary proceeding that it would be disruptive to the uniformity of bankruptcy administration for the suit to be withdrawn.

Of these two polar examples, the facts of the present Adversary Proceeding are closer to *EbaseOne*. The only hearings conducted in this Adversary Proceeding related to the Motion to Dismiss or Withdraw (January 25, 2007 and February 8, 2007); no motions have been filed which do not relate to the Motion to Dismiss or Withdraw; and this Court has not spent any significant time becoming familiar with the facts of the underlying complaint in the Adversary Proceeding. Because this Court has not invested large amounts of its time and resources and has not made any other rulings in the Adversary Proceeding, this factor favors withdrawal of the reference.

## C. Whether forum shopping and confusion will be reduced

This lawsuit was first filed as an adversary proceeding in this Court. The Defendant was not a part of this bankruptcy proceeding before the Trustee filed suit against her. Therefore, it is difficult to imagine how the Defendant's motion would be construed as forum shopping, at least the type that needs to be deterred. The Court believes that the Defendant is sincere in her argument that she is simply seeking to enforce her constitutional right to a jury trial, and is not trying to evade the jurisdiction of this Bankruptcy Court even though this is a core proceeding.

Accordingly, there are no indicia of forum shopping present; therefore, this factor favors withdrawal of the reference.

### D. Whether there will be economical use of debtors' and creditors' resources

Although this factor's plain language is limited to the Debtor and its creditors, such a strict reading under the present circumstances would too narrowly limit the focus that this factor concerns. The two parties to this Adversary Proceeding are the Trustee and a non-debtor/non-creditor third party. However, the economic impact on the Defendant, as the party moving for the withdrawal, does not appear as significant as the impact on the non-moving party, the Trustee; the Trustee will pay the creditors so that increased expenses to the Trustee eventually become increases costs to creditors.

Here, the parties have not spent any significant time briefing this Court on the underlying merits of the dispute. The Motion to Dismiss or Withdraw was filed less than 30 days after the filing of the Complaint. This is not an instance where the Court and the parties proceeded through the Adversary Proceeding for months before the Defendant attempted to enforce the right to a jury trial through seeking withdrawal of the reference. The District Court would be in no better or worse position to expeditiously rule on this suit than this Court. The expense to the parties would not be increased by the District Court adjudicating this suit instead of this Court—except as to any increases due to the use of a jury instead of a bench trial, but that consideration is not relevant under this factor. Finally, withdrawal of the

reference will not cause either party to "lose" any amount of resources that were spent in this Court because, beyond the dispute over this Motion to Withdraw, the parties have simply not invested significant resources in this proceeding before this Court. Therefore, this factor favors withdrawal of the reference.

### E. Whether the withdrawal of reference will expedite the bankruptcy process

█ A district court should consider the importance of the proceeding to the bankruptcy case and refuse to withdraw the reference if the withdrawal would unduly delay the administration of the bankruptcy case. *In re Pruitt*, 910 F.2d 1160, 1168 (3rd Cir.1990). Since this Court is unable to conduct a jury trial in this case, having the suit remain in the Bankruptcy Court and then facing *de novo* review by the District Court would delay the final resolution of this dispute, which in turn will delay the distribution to creditors in the main bankruptcy case.[5] *See In re EbaseOne*, 2006 WL 2405732, *5, 2006 Bankr.LEXIS 1861 at *18; *In re Veldekens*, 351 B.R. at 864. If the reference is withdrawn, the District Court will be able to immediately enter a final judgment. Thus, this factor appears to favor withdrawal by encouraging a more expeditious adjudication of this suit by the District Court, which will then decrease the time it takes for creditors to receive distributions.

### F. Whether a party has demanded a jury trial

#### 1. Review of the parties' arguments

█ Finally, the Court arrives at the heart of the matter before it—whether the

---

5. The Trustee generally does not make disbursements to creditors until the end of the case, after all assets have been collected and liquidated. Here, the delay in this Adversary Proceeding reaching adjudication will increase the time it takes for creditors to receive payment.

Defendant has waived her right to a jury trial. The Trustee's argument in the Motion to Strike and the Objection to the Motion to Dismiss or Withdraw is that by filing a counterclaim against the estate and seeking to recover attorney's fees from it, the Defendant has waived the right to a jury trial.[6] The Trustee relies on the private/public right dichotomy described by the Supreme Court in *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989): the Seventh Amendment protects the right to a jury trial for private rights, but not for public rights. In general, asserting a claim against the bankruptcy estate invokes the claims allowance process. The Supreme Court found this process to be a public right in *Granfinanciera;* therefore, by filing a claim against the estate, the claimant has invoked the bankruptcy court's equitable power and has waived the right to a jury trial. *Id.* at 59, 109 S.Ct. 2782. The Trustee argues that by voluntarily filing the compulsory counterclaim, the Defendant has essentially invoked the *Granfinanciera* principle of filing a proof of claim against the estate, and has therefore waived the right to a jury trial on the fraudulent transfer issue. *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) ("[T]he creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction. Granfinanciera, supra,* at 57–58, 109 S.Ct. 2782. As such, there is no

Seventh Amendment right to a jury trial. If a party does *not* submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial. 492 U.S. at 58–59, 109 S.Ct. 2782.")(emphasis in original).

There is case law to support such a position. "[S]ince the assertion of a counterclaim is the functional equivalent of filing a proof of claim, case law holds that asserting a counterclaim against the debtor converts the otherwise legal nature of an adversary into an equitable proceeding to which no jury rights attach." *Capital Assoc. Int., Inc. v. Banc One Leasing Corp. (In re Capital Assocs. Int., Inc.),* 2003 Bankr.LEXIS 931 at *18 (Bankr. N.D.Tex. Aug. 6, 2003) (citing *In re Peachtree Lane Assocs. Ltd.,* 150 F.3d 788, 798–99 (7th Cir.1998); *Leshin v. Welt (In re Warmus),* 276 B.R. 688, 693 (S.D.Fla. 2002); *Mendelsohn v. Lissauer (In re Mindeco Corp.),* 212 B.R. 447, 450–51 (E.D.N.Y.1997); *Carmel v. Galam (In re Larry's Apartment, L.L.C.),* 210 B.R. 469, 473–74 (D.Ariz.1997); *Commercial Fin. Servs., Inc.,* 251 B.R. 397, 408 (Bankr. N.D.Okla.2000)).

However, the court in *Capital Associates* concluded that this argument, which appears in many cases in many different circuits, is inapplicable under certain circumstances.[7] The *Capital Associates* court noted that those courts found a waiv-

---

6. The Trustee has not made the argument that the Defendant did not originally have a right to a jury trial on the fraudulent transfer claims, but has limited the argument to the issue of waiver of that right.

7. The Court believes that a brief summary of *Capital Associates* may provide an easier understanding of the argument being made herein. *Capital Associates* dealt with a

breach of a lease agreement. The defendant, Banc One, demanded a jury trial in its answer. The plaintiff, Capital Associates, did not disagree with the right to a jury trial, and instead moved to have the reference withdrawn so that the district court would conduct the jury trial. The dispute arose when Banc One determined that it did, in fact, want to stay in Bankruptcy Court and sought to withdraw its demand for a jury trial in an

er of a jury trial "because the counterclaim was a *prepetition* claim which would be disposed of through the equitable jurisdiction of the bankruptcy court ... [and] implicated restructuring of the debtor-creditor relationship and affected allowance or disallowance of claims against the estate." *Id.* at *25 (emphasis added) (citations omitted). Here, neither of those two justifications for finding a counterclaim to be the equivalent of a proof of claim are present. As the *Capital Associates* court stated: "[the] counterclaim is for costs and attorney's fees incurred in defending this matter. [The counterclaimant] is not a creditor. A counterclaim divests parties of jury rights *because* the counterclaim is the functional equivalent of a proof of claim, the filing of which implicates the claims allowance or disallowance process and affect the debtor-creditor relationship—equity jurisdiction." *Id.* at *26 (emphasis in original). Thus, when, as in *Capital Associates* and in the facts presently before this Court, a counterclaim does not involve the claims allowance process or the restructuring of the debtor-creditor relationship because it was not filed by a prepetition creditor, the counterclaim does not necessarily operate as the functional equivalent of a proof of claim from a prepetition transaction. If neither of those equitable bankruptcy processes are invoked by the counterclaim, then a jury trial is not waived.

In the proceeding at bar, the Defendant has raised similar points: (1) the Defendant does not hold a claim arising prepetition and is not a creditor of the estate; (2) the Defendant has not filed a proof of claim; and (3) the compulsory counterclaim which she has filed did not trigger the process of allowance and disallowance of claims. Further, the Defendant argues that the counterclaims should not be classified as arising prepetition, even though the transfers occurred prepetition, because the counterclaims are statutory liens provided by TUFTA as affirmative defenses which could not have accrued until the Trustee filed suit.[8]

## 2. The District Court's opinion in *In re Mirant* is persuasive

In addition to the parties' arguments outlined above, this Court specifically in-

---

attempt to moot the motion to withdraw the reference. *Id.* at *2.

After dispensing with an argument over a contractual waiver of the right to a jury trial in the lease, the court in *Capital Associates* addressed whether the right to a jury trial had been waived by invoking the equitable jurisdiction of the bankruptcy court under *Langenkamp. Id.* at *17. The court had to reconcile the fact that Banc One had sought attorneys' fees and costs in its counterclaim with the accepted principle that asserting a counterclaim for relief from the estate is the functional equivalent of filing a proof of claim, which would result in a waiver of the right to a jury trial. *Id.* at *25.

The court differentiated the facts in *Capital Associates* from those other cases by pointing out that Banc One was not a prepetition creditor and there was no longer an estate because the Chapter 11 plan had been confirmed. *Id.* at *27–28. Therefore, the court concluded that since Banc One was not a prepetition creditor and its counterclaim did not function like a proof of claim, no waiver occurred. *Id.* at *29.

8. Paragraph 60 of the Defendant's Answer, entitled "Counterclaim," seeks "to enforce the liens and equities given her by the TUFTA and the Bankruptcy Code." [Docket No. 6, ¶ 60.] This language is somewhat generic and this Court believes that this phrase is more in the nature of an affirmative defense to the claims asserted by the Plaintiff. Accordingly, pursuant to Federal Rule of Civil Procedure 8(c), as made applicable to this proceeding by Bankruptcy Rule 7008, this Court is of the view that this language should be designated as an affirmative defense rather than a counterclaim. And, if this language constitutes an affirmative defense, then the general rule—i.e. that the mere filing of a counterclaim deprives one of a jury trial—is inapplicable.

formed the parties, upon taking the matter under advisement, that it needed to review *Mirant.*[9] *Mirant* also involved a motion to withdraw the reference, and a fraudulent transfer was one of several claims made in the complaint. The District Court considered the same *Holland America* factors and found in favor of withdrawal because there was a valid right to a jury trial and the matter was non-core. The defendant in *Mirant* had filed proofs of claim in the main Chapter 11 case and had also been sued as the recipient of a fraudulent transfer in the adversary proceeding. *Mirant*, 337 B.R. at 121. The Bankruptcy Court held that filing the proof of claim operated as a waiver of the right to a jury trial in the adversary proceeding based on *Langenkamp* and *Katchen* before it. The District Court disagreed and found that there had been no waiver. It is instructive to review the express language of the District Court:

> Resolution of the legal claims raised in this action will not directly affect the liability or priority of Southern's[10] proofs of claim in the bankruptcy cases, *see id. [In re Rickel*, 320 B.R. 513 (Bankr.S.D.N.Y.2005) ], nor do the legal claims asserted in this action arise as part of the process of allowance or disallowance of claims in bankruptcy, *see In re Jensen*, 946 F.2d [369] at 374 [ (5th Cir.1991) ]. Rather, they essentially are claims brought by the debtors and Com-

mittee to augment the bankruptcy estate. *See id.* The determinations of the legal claims in this action simply will not directly implicate the bankruptcy claim resolution process, *see In re Behring & Behring*, 445 F.2d 1096, 1098–99 (5th Cir.1971); *In re Rickel*, 320 B.R. at 517, nor will the power of the bankruptcy court to readjust the debtor-creditor relations and reorder creditor claims equitably and completely be diminished if the legal claims in this action are tried to a jury, *see Germain [v. Connecticut National Bank]*, 988 F.2d [1323] at 1327, 1330, 1332 [ (2nd Cir.1993) ]; *see also In re Rickel*, 320 B.R. at 518.

. . . .

Earlier, in *In re Behring & Behring*, the Fifth Circuit, after recognizing *Katchen*, quoted with approval from its 1964 decision in *Gill v. Phillips*, 337 F.2d 258, 262–63 (5th Cir.1964), that "the admittedly desirable end of expeditious administration of bankruptcy estates should not be allowed effectively to eliminate the protection afforded litigants by the traditional safeguards of a plenary suit, with the right to trial by jury and cross-examination of witnesses." 445 F.2d 1096, 1099 (1971). *Katchen and Langenkamp* were distinguished in a similar way in *Germain*, 988 F.2d at 1327. As the *Germain* court noted, the mere fact that the outcome of a dispute could have the effect of enlarg-

---

**9.** The fact pattern in *Mirant* is different than the present case, but the same legal arguments apply. There, the defendant had filed a proof of claim against the estate prior to being sued by the debtor in the adversary proceeding. However, the court found that the subject matter of the adversary proceeding was distinct from the proof of claim, and that even though the defendant had filed a proof of claim in the main bankruptcy case, this filing did not automatically mean that a jury trial had been waived in the adversary proceeding. The court considered whether any counterclaims filed in the adversary pro-

ceeding, separate and apart from the proof of claim in the main case, constituted a waiver of the right to a jury trial and determined that there was not a waiver.

**10.** The Southern Company (Southern) was the defendant in *Mirant*, 337 B.R. 107, and filed a motion for withdrawal of reference of an adversary proceeding and a motion to transfer the adversary proceeding to the U.S. District Court for the Southern District of Georgia.

ing the estate does not mean that the dispute will have any effect on the allowance of a disputant's claims in bankruptcy. *Id.* In that respect, disputes such as ones involved in the instant action differ from those involved in *Langenkamp* and *Katchen* (avoidance of a preferential transfer), which went directly to the process of allowance and disallowance of claims. *Id.*

*Mirant,* 337 B.R. at 121–22.

This Court believes that the logic in *Mirant* is persuasive and should govern the analysis of the jury trial issue for this Adversary Proceeding.[11] First, this Court notes that while many opinions include statements to the effect that filing a counterclaim operates to serve the same function as filing a proof of claim, such a notion is entirely overbroad and fails to recognize the root cause of the waiver discussed in *Langenkamp.* Not every counterclaim, or in *Mirant* an actual proof of claim, will involve the process of allowance or disallowance of pre-petition claims or invoke the equitable power of the bankruptcy court to adjust the debtor-creditor relationship. Inherent in the notion of adjusting the debtor-creditor relationship is the existence of such a relationship on the date of filing. Here, on the date of the filing of the petition, there was no debtor-creditor relationship. If the Defendant can be said to have a claim for attorneys' fees and therefore be a creditor of the Debtor, such a relationship could only arise at the *end* of the Adversary Proceeding; stated differently, the claim did not arise prepetition. Thus, the counterclaim made by the Defendant in this suit is a defense to the fraudulent transfer action, and does not serve the same purpose as a proof of claim.

If the Defendant is successful on her counterclaims, she would not have a claim against the estate for any *pre-petition* debt; and an award of attorneys' fees after a successful defense would not invoke the process of allowance or disallowance of *pre-petition* claims. The Defendant is not a creditor, and no possible result from the counterclaims would make her a creditor.[12] As discussed in *Mirant,* the present action by the Trustee is an attempt to enlarge the value of the bankruptcy estate, but this suit alone does not involve the claims allowance process. If the Defendant succeeds on her counterclaims, and the Trustee loses on the fraudulent transfer claims, the estate will not be enlarged, but it does not follow that there was a claim which was allowed or disallowed. Without needing to reach the issue of whether the counterclaim was permissive or compulsory, this Court is of the view that by filing the counterclaim (1) the Defendant, as a noncreditor, did not invoke this Court's equitable powers to restructure the debtor-creditor relationship; and (2) no possible resolution of the Defendant's counterclaim will involve the allowance or disallowance of a claim. Accordingly, there has not been a waiver of the right to a jury trial.

## IV. CONCLUSION

After reviewing the *Holland America* factors and concluding that the Defendant has not waived the right to a jury trial, this Court recommends that the District Court withdraw the reference of this Adversary Proceeding. As an alternative, in order to save the resources of the District Court and to utilize this Court's already

---

11. This holding also accords with *Capital Associates* discussed above.

12. The Code defines "creditor" to be an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A) (the remaining subsections of § 101(10) do not apply).

existing familiarity with the main bankruptcy case, the District Court could withdraw the reference of the Adversary Proceeding for the purposes of conducting the jury trial, but direct this Court to handle all discovery, dispositive motions and other matters leading up to jury trial.